# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D2024-2436

_____

FLORIDA COMMISSION ON
OFFENDER REVIEW,

    Appellant,

    v.

CYNTHIA M. JOHNSON,

    Appellee.

_____


On appeal from the Circuit Court for Leon County.
Jonathan Sjostrom, Judge.


February 18, 2026

RAY, J.

The Florida Commission on Offender Review appeals a circuit court order granting Cynthia Johnson's petition for writ of mandamus and directing the Commission to treat her 1986 life sentence for armed robbery as parole eligible. Because parole for non-capital felonies was abolished by statute before Johnson committed her offenses, and because *Bedford v. State*, 633 So. 2d 13 (Fla. 1994), does not compel a different result, we reverse.

## I

In 1986, a Hillsborough County jury convicted Johnson of first-degree murder and armed robbery arising out of a single criminal episode. For the murder—a capital felony—the trial court

imposed a life sentence with a mandatory minimum of twenty-five years before parole eligibility. For the armed robbery—a first-degree felony punishable by up to life imprisonment—the court imposed a concurrent life sentence with a three-year minimum mandatory. The sentencing transcript reflects that, on the armed-robbery count, the court considered the recommended guidelines range and then departed from it, explaining that "the guideline sentence does not take into consideration" that Johnson also stood convicted of first-degree murder arising from the same episode. The Second District Court of Appeal affirmed Johnson's judgment and sentence on direct appeal. *Johnson v. State*, 529 So. 2d 698 (Fla. 2d DCA 1988).

Decades later, Johnson filed a motion in the Hillsborough County circuit court under Florida Rule of Criminal Procedure 3.800(a) seeking to "correct or clarify" her armed-robbery sentence to reflect parole eligibility. She acknowledged that neither the written judgment nor the court's oral pronouncement addressed parole eligibility for that count. But she asserted that the Commission was treating the sentence as parole ineligible and that this "interpretation" rendered the sentence illegal on its face.

Johnson's motion advanced two arguments. First, relying on the supreme court's opinion in *Bedford*, she contended that because the armed-robbery sentencing statute does not itself restrict parole eligibility, the Commission could not treat her sentence as parole ineligible. Second, she acknowledged that the guidelines-era sentencing law generally eliminated parole for non-capital offenses committed on or after October 1, 1983, but argued that the guidelines did not govern her armed-robbery sentence because the guidelines scoresheet did not allow first-degree murder to be scored as the primary offense. In her view, that scoring limitation meant the armed-robbery count was not sentenced under the guidelines and therefore was not subject to the parole bar.

The circuit court denied the motion. It reasoned that Johnson's sentence contained no parole restriction and that the Commission's parole determination could not render an otherwise lawful sentence "illegal" for purposes of rule 3.800(a). The court also explained that, although the armed-robbery statute is silent

2

on parole, the sentencing-guidelines law in effect at the time had eliminated parole for armed robbery—placing Johnson's sentence outside the parole system and leaving no legal basis to amend it.

The Commission later granted Johnson parole on her first-degree-murder sentence, effective February 22, 2023. A Special Commission Action advised that she had been "paroled to [her] guideline sentence" and would return before the Commission after completion of her concurrent sentence. The Commission's subsequent Order Granting Parole stated that the grant applied to the murder conviction and noted that Johnson remained "not eligible for parole" on her armed-robbery life sentence; it further provided that the Commission would later determine whether actual release should occur after completion of the parole-ineligible sentence.

Johnson then sought mandamus relief in the Leon County circuit court. She asked the court to direct the Commission to recognize her armed-robbery life sentence as parole eligible and to release her onto parole supervision. The circuit court granted the petition. Viewing *Bedford* as controlling, the court concluded that the Commission acted unlawfully by declining to recognize parole eligibility for the armed-robbery sentence and therefore abused its discretion. It ordered the Commission to recognize that sentence as parole eligible and to release Johnson, reasoning that she had already been granted parole on the murder conviction. The Commission now seeks appellate review from this court.[*]

---

[*] The Commission initially sought "second-tier" appellate review of the circuit court's final order by petition for writ of certiorari under Florida Rule of Appellate Procedure 9.030(b)(2)(B). But where, as here, a mandamus petition seeks to compel agency action based on an asserted statutory duty—rather than to review a quasi-judicial determination—the circuit court is not acting in its appellate or review capacity, and its final order is reviewable by direct appeal. *See Fla. Dep't of Corr. v. Gould*, 344 So. 3d 496, 505 (Fla. 1st DCA 2022). We therefore treat the Commission's filing as a request for plenary appellate review. *See* art. V, § 2(a), Fla. Const. (directing supreme court to adopt a

## II

Mandamus is an extraordinary remedy. It lies only where the petitioner establishes a clear legal right to the performance of a ministerial duty and the absence of any other adequate remedy. *City of Miami Beach v. State ex rel. Epicure, Inc.*, 4 So. 2d 116, 117 (Fla. 1941). In this case, Johnson's entitlement to mandamus depends on whether the law affords her any right to parole consideration on her armed-robbery sentence. If no such right exists, the Commission owes no duty to consider parole, and mandamus cannot lie. *See Gould*, 344 So. 3d at 505 (explaining that mandamus turns on whether the petitioner has a legal right to the exercise of discretion by the agency, rather than on how discretion should be exercised). Because that threshold inquiry presents a pure question of law, rather than the resolution of any factual dispute, our review is de novo. *Id.*

The answer begins with the sentencing-guidelines statute in effect when Johnson committed her crimes. That statute requires the guidelines to be applied to all non-capital felonies committed on or after October 1, 1983, and it removes offenders sentenced under that scheme from the parole system. §§ 921.001(4)(a), (8), Fla. Stat. (1985).

Johnson's armed-robbery conviction fits within that statutory framework. Armed robbery is a non-capital felony, punishable by imprisonment for a term of years not exceeding life. § 812.13(2)(a), Fla. Stat. (1985). Johnson committed the offense in 1986, after the sentencing guidelines took effect. To avoid the statute's parole bar, Johnson advances a more specific theory. She contends that because she was sentenced in the same proceeding for first-degree murder—a capital offense that could not be scored on the guidelines scoresheet—the guidelines did not apply to her case at all. In her view, the trial court's upward departure on the armed-robbery count confirms that the sentence was imposed outside the guidelines and therefore outside the statutory abolition of parole.

---

"requirement that no cause shall be dismissed because an improper remedy has been sought"); Fla. R. App. P. 9.040(c).

4

Florida sentencing law resolves that contention differently. A departure does not take a sentence outside the guidelines framework. It presupposes that the guidelines apply and reflects the sentencing court's judgment that the recommended range is inadequate. *See Williams v. State*, 28 So. 3d 70, 71 (Fla. 1st DCA 2009). The same is true when capital and non-capital offenses are sentenced together. The capital offense itself falls outside the guidelines, but the non-capital offenses do not. *See Coleman v. State*, 483 So. 2d 539, 540 (Fla. 2d DCA 1986). Any difficulty scoring the capital offense may explain why the court departed on the armed-robbery count. *See Torres-Arboledo v. State*, 524 So. 2d 403, 414 (Fla. 1988) (recognizing that "the fact that a defendant has been convicted of first-degree murder, a capital felony which cannot be scored as an additional offense at conviction, may serve as a clear and convincing reason for departure" from the guidelines sentence on a non-capital offense). The resulting sentence therefore remains a guidelines sentence, not an illegal or non-guidelines disposition, and it does not restore parole eligibility where the Legislature has withdrawn it.

Because Johnson's armed-robbery sentence was imposed while the sentencing guidelines governed non-capital felonies, the statutory exclusion from parole applies by its own terms.

That brings us to Johnson's reliance on *Bedford*. But *Bedford* cannot carry the weight Johnson places on it. *Bedford* was decided under the supreme court's all-writs jurisdiction and in a highly compressed opinion. 633 So. 2d at 13. Bedford had been convicted of first-degree murder and kidnapping in the late 1980s and initially sentenced to death for the murder and to life imprisonment without parole for the kidnapping. *Id.* at 14. After the death sentence was vacated and Bedford was resentenced to life imprisonment with a twenty-five-year minimum mandatory on the murder count, the Court addressed the kidnapping sentence and concluded—without explaining why—that "the only illegal part of the sentence is the prohibition of eligibility for parole." *Id.* The Court added that "[t]he judge could legally impose a life sentence in the kidnapping charge, but could not preclude eligibility for parole for kidnapping," and it directed that the parole-prohibition language be stricken. *Id.*

5

That is the full extent of *Bedford*'s reasoning. The opinion contains no discussion of the sentencing statutes then in effect, no analysis of the sentencing guidelines or parole framework, and no explanation of how the Court reached its conclusion regarding parole eligibility. With no articulated rule of law, we cannot supply one.

Stare decisis binds us to what a prior decision actually decided—not to what might have been assumed or silently considered. "Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." *Fla. Highway Patrol v. Jackson*, 288 So. 3d 1179, 1183 (Fla. 2020) (quoting *Webster v. Fall*, 266 U.S. 507, 511 (1925)); *see also Waters v. Churchill*, 511 U.S. 661, 678 (1994) ("[C]ases cannot be read as foreclosing an argument that they never dealt with.").

Read in that light, *Bedford* does not establish the rule Johnson proposes. It does not hold that a non-capital life sentence imposed alongside a capital life sentence remains parole eligible, and it does not displace the Legislature's express decision to abolish parole for non-capital felonies governed by the sentencing guidelines.

### III

The Commission properly declined to extend parole to a non-capital sentence the Legislature placed outside the parole system. Any inequities Johnson perceives in the interaction between parole-eligible and parole-ineligible life sentences reflect legislative policy choices, not matters the Commission may correct or the courts may remedy through mandamus. We therefore reverse the order granting mandamus and remand with instructions to deny the petition.

REVERSED and REMANDED.

LEWIS and BILBREY, JJ., concur.

6

_____

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

_____

Mark Hiers, Deputy General Counsel, Florida Commission on Offender Review, Tallahassee, for Appellant.

Seth E. Miller and Brandon Scheck of the Innocence Project of Florida, Inc., Tallahassee, for Appellee.